Good afternoon, Your Honor. Tom Kenworthy representing the plaintiff, Appellant Baldwin Graphic Systems. This case involves two patents involving technology for cleaning printing presses. We've got the facts and decisions below well in mind, so you can see right to the heart of your appellate contention. Very well, Your Honor. This is an appeal for grants and summary judgment. The whole issue is our claim construction. Three terms involving two different patents. The first, the reissued patent, there are two claim issues, claim limitations at issue. One, a pre-sewed fabric roll. The second, a sealed sleeve. With respect to the first, the district court found that it was limited to a single pre-sewed fabric roll. With respect to the sealed sleeve, the court found it was a heat sealed sleeve. How is your patent claim valid if it is read to be construed as something broader than a heat sealed sleeve when the examiner clearly stated for you to eliminate heat and thereby encompass any other kind of sealing method, you would be adding new matter to the specification. So isn't implicit in that the notion that your specification doesn't disclose anything other than heat sealing? I don't think so, Judge Moore. A couple of issues. One, of course, the issue of validity is not presently on appeal. If it's going to die, that would be an issue that goes... But don't we construe claims under Phillips to sustain their validity when possible if there's ambiguity in the claims scope? I think there are two functions. One, it has to be a practicable construction. It has to be consistent with claim construction principles and it must not do violence to the language. And I think it does clear violence to the language and it violates claim construction principles to construe sealed sleeve to mean heat sealed when the very purpose of the reissue was to broaden it to cover only a seal. And didn't the examiner say you can't get that because you didn't disclose it in your spec? No, the examiner didn't. The examiner said you may not amend the spec, so you're now going to have a different base. Why can't you amend the spec, though? Well, I'm not sure we agreed with that, but we... But why did he say it? He said it was a new matter. He said it was a new matter. So one, an ordinary skilled NER reading that prosecution to understand what the claim scope covers, why wouldn't it at least raise ambiguity as to whether or not you agreed to nothing more than heat seal? Because the claim... Even if it's not a clear mistake of what... Why did the claim then issue, by the way? Because there wasn't a problem with there not being support because there was a... But he said there's a problem with support. He said there's a new matter problem. He said there's a new matter... He said there's a new matter problem... Why is it then issued? It issues because upon further consideration of the claims, he found they were adequately supported by the... Where does it say that in the prosecution history? Well, it issued. I mean, why did it issue? I don't think he expressly then addressed that issue. Do you think he needs to? Do you think there needs to be some kind of clarification when he protests new matter, new matter, new matter, and then issues the very claim with the new... that covers the new matter? Don't you think there needs to be some explanation? Well, I think it might have been desirable for sure. I don't think it renders it invalid for a variety of reasons, and it certainly doesn't change what the plain meaning of the language sealed-sleeve means. If it's invalid, which we don't think it is... Remember, we have to take into consideration the prosecution history. That's part of our... the intrinsic evidence we consider when construing this language. No question. The prosecution history makes clear that the very purpose of the reissue... No, the only thing the prosecution history tells us clearly is what Judge Moore went over with you. Well, I think the prosecution history of the reissue declaration makes it very clear that the reason it's going is because it originally claimed less than they were allowed to claim and was to broaden it specifically to cover sealed sleeves that weren't heat-sealed. That's part of the prosecution history. So to suggest... And the examiner says that's new matter. Examiner says... And then issues the claim that has the new matter. And that's why we're all... I appreciate that, but the examiner says, I'm not going to allow you to amend the spec and then piggyback your claim onto the amended spec. You have a claim, a new claim, that deals with heat-sealed... excuse me, just sealed. And it's going to have to rise or fall on the original spec. Actually, counsel, the only claim you've asserted before us is Claim 32, which was not filed until after the examiner said to keep anything other than heat-sealed clean new matter. It was in your response when you agreed to remove your attempt to modify the specification. So Claim 32 was not pending beforehand. It was not part of the original reissue. You added it after you acceded to the examiner's statement that you cannot include new matter in the spec. But there were claims. Why not construe... But the only one before us is 32. No, I understand, but... So why not construe that? Why wouldn't one of ordinary skill-only art say, Okay, examiner says new matter. You agree not to modify the spec because you want to overcome that problem that the examiner has. Then you add a claim that says sealed. Everyone of skill-only art would understand it since you're adding it after the fact it's limited to heat-sealed. There were sealed... Those are not the claims. I understand that, but it's part of the history. There's one claim. I understand that. I understand that, Your Honor. But if you're looking at the history and the purpose and the intent, you look at it all and you look at the reissue declaration and it makes clear whether this particular claim, which also has additional limitations, it makes clear that the intent was not to disavow just a sealed claim, a sealed sleeve, but to specifically claim a sealed sleeve. And that's not changed. And the presumption of preserving validity still requires that you apply general claim construction principles that would be reasonable and not change the words. Reading heat into heat-sealed just because it may have a validity problem, that may be a problem for us when we go back. But respectfully, if you look at it all, it's not a way that someone is going to understand that sealed sleeve means limited heat-sealed. All right. Anything further? Well, I have two other claim issues I know I have limit on, so I'll jump to the last because I think the case law dealing with A is pretty clear, particularly the KCJ, and there's clearly no intent here to limit it. And in fact, scanner technology says if you use A, it shows you intent. So the last one claim issue was the only issue in the 976, and it related to the issue of reduced air content fabric. And in this one, I would characterize it as strange. It's hard to tell why the judge went the way he went. But ultimately, he saw a need, even though the patentees, when they meant reduced air content, clean fabric, used that term. If they meant non-reduced air content, clean fabric, they used that term. Other times, when they just used clean fabric, to me, from normal construction, it's obvious they weren't intending to denote one way or the other of whether or not it was or was not, at that time, reduced air content. Counsel, do you agree that there is a factual dispute over whether Siebert's fabric rolls are wound so as to reduce the air content? I mean, so it's supposed to be a group of you on this claim construction issue. There is a disputed issue of fact under what you would deem to be the problem. At best, for the appellate. At best. I'm not sure there is a disputed issue of fact, because I think their expert said it's clear on the fact the provider of the rolls would indicate that it would reduce the thickness, and the thickness reduction is going to reduce the air content. So at a minimum, there's a disputed issue of fact. Certainly, it's not in favor of the appellate. So I think, to answer the question, the construction is critical to the issue. And what the judge below did was look at Claim 18 that talked just about a cleaning fabric. But it was talking about said cleaning fabric, which goes back to Claim 14, which is a cleaning fabric which even the district judge said that reference to, if you looked at it in context, would be one that had not had the air content reduced. He ultimately decided that for all claims, there was going to be a requirement that the air content be reduced before the cleaning fabric is round on a core. The apparatus claim is going to require a core. There's nothing in the plain language that supports that. There's no disclaimer. He didn't rely on a disclaimer. The one disclaimer he relied on was the disclaimer which was that the air content must be reduced before it's saturated in the solvent. But that doesn't address this issue because in Column 9, Lines 1 through 10, it's clear that the saturation can occur before it's wound on a core, after it's wound on a core, or both. So that doesn't answer the question of whether or not, or whether there's a need that it actually be wound on a core, excuse me, that the air reduction occur before it's wound on a core. Do you want to say the rest of your rebuttal time? I will. Thank you. Mr. Farrell. May it please the Court. Judge Moore, I'd like to respond to the questions you raised regarding the sealed sleeve. On page, Joint Appendix, page 595, is the language that was used by the applicant when they added this new claim, which ultimately became Claim 32. And they said at that time, if you were the fact that added Claim 57, it was 57 at the time, combines the substance of original reissued Claims 28 and 44, it is respectfully submitted that Claim 57, although broader in some respects, raises no new issues which would require further search and consideration. And I think it's clear that it did raise new issues that required further search and consideration. When the examiner, on page 610 of the appendix, the examiner's… Well, wait a minute. What are we supposed to deduce from what you just said? That because they made that representation, that therefore what? Well, Your Honor, what I would ask the Court to deduce is that here the examiner is just more indicative. The examiner looked at these amendments, the proposed amendments to the specification, did not allow them, rejected them repeatedly. And also the claims, the claim lines were rejected repeatedly. And then they acquiesced. They disavowed that. They told the examiner they were going to go forward. They were going to not include the amendments. So they have this entire submission where they take out the words. Sure, all the words that he did. That he tried to put in. And then they basically took that out and disavowed that. So at the time… They disavowed the changes to the specification. To the specification and also to the claims, certain of the claims. With? I believe in what became 29, 30, and 31. Show me here. Although they're dependent. There were made dependent claims on the preceding claims. But the claim at issue here wasn't changed even when the… That's correct. That's correct. That's correct. And so there's no support in the disclosure of the specification for a broader claim language. Maybe there is, maybe there isn't. It hasn't been adjudicated. It hasn't been briefed. It hasn't been decided at the district court level. That's correct. Judge Moran, our former chief judge of our district, did a very thorough job in looking through the prosecution history. And here in this instance, he concluded, and I realize it's de novo review, but he concluded that the scope of that claim, of the claim term, sealed sleeve, should not be any broader than he'd see. Well, look, if the examiner had said, look, since I'm making you the applicant take out the new matter, I'm going to make you narrow your claim to reinsert the word heat in front of sealed, then it would all make sense to me. But when he disallows the added language in the written description but then allows a claim that omits the adjective heat and merely requires that the sleeve be sealed, it looks to me like it's completely ambivalent. Well, Your Honor, we would suggest and argue that it's either that the claim should not be construed that broad. It should not be construed that because there's no support in the specification. The examiner made it very clear that it wouldn't allow those amendments that were seeking to be broadening amendments. And I realize, I mean, this was a reissue application. They were well within their time to file an attempt to broaden reissue. And Mike, just maybe help me make sure I understand your argument. I understand your argument to be twofold with regard to this issue. One, you're trying to get us to agree with what the district court said about a clear and unmistakable disavowal here and hopefully realize there's a little skepticism among us. And two, it's that if you did construe it this way, it wouldn't satisfy written description of the matter under 132. I understand you agreed to raise both of those. That's correct. Okay. The second would be an alternative argument for supporting the same judgment below. That's correct. That's correct. And that's consistent with all of our arguments in the brief. We believe that ultimately Judge Moran spent a lot of- I'm just curious. I just want to know. The written description, no. Not the new matter written description? Not the new matter written description, no. I don't believe we did. We raised an indefinite misargument. We did not raise that. I don't believe. Why should we go beyond what was litigated below or a court of review or not the great court of the sky where there's any issue anybody can bridge on? That's right, Your Honor. You cannot go beyond what was litigated below. So it's whatever was litigated below. And in this instance, Judge Moran looked at this term. He construed it consistent with the specification. And we would urge this court to reach the same conclusion because we believe his judgment was- Well, when you say consistent with the specification, of course the specification talks about heat seal. It's at least the preferred embodiment. But that doesn't get you where you need to go. Well, preferred embodiments are always narrower than the broadest independent claim. It doesn't mean that the independent claim gets narrowed down until it's coterminous with the preferred embodiment. Well, we can't exceed the scope of the disclosure. And here the disclosure, the gist of this invention was to have something where the solvent did not migrate in the roll. And it's very clear from the way the claims were presented and the language in the specification that what was invented here was something more like what you would just to analogize a slim gym as opposed to a bag of hot dogs, a leaky bag of hot dogs. In this instance, the- The trouble with that is we don't know how leaky, how tight, how airtight, how much pressure or any such parameter. But Judge Moran does and did. And he ruled on summary judgment. He had a full record in front of him. That doesn't mean he couldn't have been mistaken. He's a good judge. He's an experienced judge. He did a careful job. He had a full record. Fine. But that doesn't mean he's irreversible because he had to be right. Judges can be wrong. We believe that in this instance, Your Honor, we believe he is not wrong, that he was correct, that his rulings were- Because the spec repeatedly says heat seal. The spec repeatedly says heat seal. That's all right. And the prosecution in history, in addition, chose an effort to broaden that term. And that effort was rebuffed by the examiner. They said that's fine. We'll take that out of the specification. We'll take it out. Why is it that consistent with the gamble that there's still enough in there without the additions to support a non-heat seal type seal? It's conventional in the industry. There are other ways of sealing the plastic and casing. It doesn't have to be by heat. It can be by a clamp. It can be by glue. It can be by, who knows, maybe state- Okay, I understand what you're saying. The invention was very clear. This is a crowded field of art. They were aware of other container- Hey, look, there may be huge problems. I understand. But we're not there yet. We're just trying to review an explicit claim construction of a narrowing sort by a district judge. And, of course, he had some reasons to support it. But it's not clear to me that it's necessarily correct just because the spec repeatedly says heat seal. Okay. It looks to me like it's ambiguous. Isn't the A construction of the district court expressly contrary to our rule that A means one or more? The rule, Your Honor, yes. But the cases that apply the rule, and when you look to see whether the inventor and the patentee has clearly attempted to amend the intent to have it read singular, the facts in this case are very similar to the facts in the Adcox case, which I believe Your Honors were on, and the Institute 4 case, which I believe you also- Don't worry about that. Tell us why the customer would care, whether he gets two rolls in a single plastic casing or whether he gets just one roll. What difference is it going to make? Well, the customer, with the invention that Baldwin has, Baldwin had a solvent that evaporates, and because it's a solvent that evaporates, it needs to be in a tightly sealed container. Yeah, but that doesn't mean there can't be two rolls in there as opposed to one as far as I can tell. Well, the language, though, the language of Claim 32, and we're only dealing with language of Claim 32- A, and A can be one or more, period. Or it can be only one, and it depends on the context. We're trying to get you to help us. We're showing why the context requires that it be read as if it had said one and only one. Okay, and the context is it uses the word said fabric roll four times in the claim later on. Now let's get back to the original without some kind of a referring adjective like said. Yes, standard legal usage. You use said often to refer back. Yes, yes, and then it talks about said fabric roll being disposed there around, and then it talks about a means for locating said fabric roll adjacent to and operatively associated with the cylinder to be claimed. In order for that to happen, it can only be one. It can't be two rolls up there. There can't be two things adjacent? No, just one roll, because there's an off-take reel where the fabric goes through. It touches against the cylinder, the cleaner, and that goes for an off-take roll. So it can only be one. It can only be one. Why isn't there a possible chain of rolls and adjacent cleaners? We're dealing with what they invented here, and what they claim to have invented, what they claim in claim 32. And what they claim is a pre-sold fabric roll. Which can be one or more. That means you can have two, and we can have two adjacent things next to those two, or even four adjacent things next to four of those, right? It's one or more. And then when we refer back to one or more of them, we would say we refer back to said roll or rolls, right? Right. Then I'm still struggling really hard to figure out what you told me that doesn't follow the general rule of A means one or more. Okay, then you go to the specification, and the specification refers to the pre-sold fabric roll. Can you refer to them one at a time? Yes, we've got one here, and so we're going to refer to this one. It could be more than one, because we said A in our claim. I'm still struggling. There's a line in the specification which says whereby the pre-soaked saturated fabric roll can be transformed and stored vertically and horizontally until use without distributing the distribution of the solvent in the fabric roll. And if you have more than one, if you take a bag of hot dogs, the water is going to go down in one minute. Not if the bag is tight. So you're asking us to assume that that requires heat shrinking and heat sealing. Or just shrinking and sealing. It doesn't have to be heat. Or shrinking and sealing. As long as it's tight, it's going to maintain the solvent evenly distributed throughout the wound roll. Whether the tightness comes from heat sealing or clamp sealing, it would seem to make no difference. No. I believe it does make a difference. The invention speaks to a single roll. That's the issue. Yes, I understand. That's the issue. Assume the outcome here. I understand. Anything further? I think we have to take a pretty broad line. Do you? On the final issue, which was the reduced air content cleaning fabric, Judge Moran spent a lot of time on that issue. And we believe that he got it right. I can't even understand what he got. Can you help me understand what he decided? He decided that the cleaning should be construed so that the reduction in the air content of the fabric happens before it is formed. Why would that be a logical construction? Because the specification states several times, a cleaning fabric, for example, General Appendix 50, Column 3, a cleaning fabric with reduced air content, so the air content is already reduced, and then it says, is wrapped around the core to form a fabric roll. Elsewhere it says that the air reduction can be done by calendaring or any other conventional means. And it looks to me like one of the conventional means is winding it tightly on the spool. The air content only has to be reduced 1%. I think I could wind it tight enough by hand to get a 1% or more air reduction. The conventional means was that that language appears actually in the 157 patent, which was the predecessor to the reissue patent. And in this instance, we have the 157 patent, which teaches and has a roll where the fabric is wound around it. And we also have all of the prior art and the public use evidence that was before Judge Moran. When we move, we move for invalidity based on public use and obviousness. That's not before. I understand that's not before. I also don't understand how the before determination by the district court necessarily precludes the winding being used. Can't you wind it and then saturate it after it's already wound? Can't you wind it and then saturate it after? That can be done, yes. Well, why doesn't that meet what he thinks was required? And yet have the air reductions occur during and because of the winding? Because isn't that what occurs in the accused devices? No, it's not what occurs in the accused devices. They saturate then wind? Oh, the accused devices. You're talking about Siebert's product. The Siebert's product, we buy from a supplier, roll it. They are then sold, yes. Oh, right. So why doesn't that, I guess, isn't that consistent with the district court's determination about before then? Well, the district court construed the claim, reduction in air content, is requiring that the reduction in air content occur prior to the winding. Yes. Yes. All right, thank you. Thank you. Mr. Kenridge, you have a little bit of remote time left. Thanks, Ron. I'll take very little time. Unless there are any further questions, I'd like to just devote my time to the reduced air content. I think we've gone through the others a lot. But one, with respect to what there was a disclaimer of, it only relates to the fact that the air content has to be reduced before saturation. But when saturation can occur, it's expressly addressed in column 9, lines 1 through 10, as either before being wound onto a core or after being wound onto a core, or both. So there is absolutely no problem with any disclaimer with having the air reduction occur during the process of winding. So that disclaimer doesn't speak to whether the winding can be the method used for air. That's correct. It is neutralized to that, as specifically set forth in column 9, first 10 lines. And what Judge Moran effectively did was try to construe just the term fabric with concepts of whether or not it had been reduced in air content. Where the intent to do that, those terms were used expressly. And in fact, when you look at Claim 18, which was his base, it's clear that you can't make that. And it's not a logical claim construction. Counsel, just as a matter of curiosity, were you the patent prosecutor? I was not the patent prosecutor. I feel great sympathy for Judge Moran here, because it looks to me like the patent examination process and the words of the patent examiner were unclear. And some of the actions seemed to be self-contradictory. The patent drafting itself was very confusing. There can be claims that are inconsistent, dependent claims that are inconsistent with a dependent claim. No wonder district judges have a hard time with construing patents when they're so carelessly written and so carelessly examined. Makes you feel very sympathetic for the quandary of the district judge, not to mention everybody else involved. I have a question. Anything further? Thank you. Thank you very much, both of us counsel. We'll take the case under advisement.